U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

NOV 13 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DAVEON McCULLOUGH | CIVIL ACTION NO. 05-0674 |
| -vs- | JUDGE DRELL |
| WARDEN BURL CAIN | MAGISTRATE JUDGE KIRK |

## REASONS FOR JUDGMENT

Before us is the Report and Recommendation of the Magistrate Judge recommending that the petition in the above-styled case for Writ of Habeas Corpus under 28 U.S.C. § 2254 be granted on the second of Petitioner's three grounds. (Doc. 39). For the reasons set forth below, we decline to adopt the final conclusion of the Report and Recommendation on this ground and deny issuance of the Writ. However, we adopt the Report and Recommendation that Petitioner's first and third grounds lack merit—respectively, the claims that exculpatory evidence was withheld from Petitioner in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and that Petitioner had ineffective assistance from trial defense counsel—and deny issuance of the Writ on those grounds as well. (Doc. 39, at 15, 39).

### I. *Background*

The facts of this case are set forth at some length in the Louisiana Third Circuit's opinion in *State v. McCullough*. Briefly, Petitioner was convicted in October 1999 of one count of second degree murder in Louisiana's Ninth Judicial District Court, Rapides Parish. He is serving out a life sentence in a state penitentiary for his participation in a

murder in which he was found to have restrained the murder victim. *See State v. McCullough*, 744 So. 2d 1105 (La. 2000), *writ den.*, 806 So. 2d 669 (La. 2002).

In his application seeking release from allegedly unconstitutional custody, Petitioner elaborates the second ground for pursuing the Writ as follows:

> Due Process was violated when the trial judge, in the presence of the jury, allowed the State to call a witness who faced the same fate to testify and denied due process when it prohibited the defense from calling other witnesses who also faced the same fate.

(Doc. 1-4, at 2). The Petitioner contended on appeal that this due process violation occurred when "his presence at the scene was established [by the testimony of] two convicted felons[, Jerry Joseph and William Wansley,] and he was prohibited from using other co-defendants' statements that do not mention his presence at the scene of the crime." *McCullough*, 744 So. 2d at 1121.

## II. *Applicable Law*

28 U.S.C. § 2254 provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
   (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States*; or
   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
(e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, *a determination of a factual issue made by a State court shall be presumed to be correct*. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

2

*Id.* (emphases added).

Under the "contrary to" clause in subsection (d)(1)—addressing pure questions of law—a court reviewing a federal habeas application may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or (2) the state court decides a case differently than the United States Supreme Court on a set of materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) ("[T]he state court need not even be aware of [United States Supreme Court] precedents; 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'"). This clause is not implicated by Petitioner's application.

Under the "unreasonable application" clause in subsection (d)(2)—addressing mixed questions of law and fact—a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Wiggins*, 539 U.S. at 520–21. The focus of this inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable; for purposes of review, an "unreasonable" application is different from a merely incorrect or erroneous one. *Id.* at 520 ("[T]he state court's decision must have been more than incorrect or erroneous."); *see also Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state
3

court applied that case to the facts of his case in an objectively unreasonable manner."). Legal principles are "clearly established" for purposes of our review when the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision establish those principles. *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

Finally, the scope of federal habeas review of state court fact findings is significantly restricted by subsection (e)(1) of § 2254, as a petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous to rebut the presumption of correctness. *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002); *see also Young v. Dretke*, 356 F.3d 616, 628–29 (5th Cir. 2004) (relating that even unarticulated findings of fact "can be implied from explicit conclusions of law," and are "presumed to be correct" as well).

## III. *Analysis*

The Petitioner's second ground raises the issue of whether the state trial and reviewing courts erred, under clearly established federal law—specifically *Chambers v. Mississippi*, 410 U.S. 284 (1973) and, subsequently, a plurality's interpretation of *Chambers* in *Montana v. Egelhoff*, 518 U.S. 37 (1996)—in not allowing the petitioner to introduce the out-of-court statements of three co-defendants when they took the stand and pleaded the Fifth Amendment.[1] The Petitioner claims that pleading the Fifth

---

[1] "[A]lthough the written motions [*in limine* filed in the trial court] sought introduction of the statements of *five* defendants, at trial, defense counsel referred to only *three* of the defendants: Fredrick Gradley, Cedric Howard and Fredrick Bush. Thus

4

Amendment rendered these declarants unavailable under Louisiana law, meaning that the co-defendants' out-of-court statements would be inadmissible hearsay unless some exception applied.[2] The Petitioner claims the co-defendants' out-of-court statements tend to show that he is innocent. The Petitioner urges that this is to be inferred from the fact that these three statements—made by Fredrick Gradley, Cedric Howard, and Fredrick Bush—while listing the names of others present at the crime scene, simply do

---

our discussion will be limited to whether the statements of those three individuals should have been admitted." *McCullough*, 744 So. 2d at 1122 (emphases added).

[2] As relevant to this case, Article 804 of the Louisiana Code of Evidence states:

> A. **Definition of unavailability.** Except as otherwise provided by this Code, a declarant is "unavailable as a witness" when the declarant cannot or will not appear in court and testify to the substance of his statement made outside of court. This includes situations in which the declarant:
> (1) Is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of his statement;
> . . .
> B. **Hearsay exceptions.** The following are not excluded by the hearsay rule *if the declarant is unavailable* as a witness:
> . . .
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

LA. CODE EVID. ANN. art. 804 (2006) (emphasis added).

5

not mention him as among those at the scene or, in some cases, do not even mention him at all. After each declarant was put on the witness stand—and claimed a Fifth Amendment privilege not to testify—the trial court refused to admit their earlier out-of-court statements. The trial judge apparently based his ruling on the prosecution's obvious inability to cross examine the maker of the statements. Unfortunately, Petitioner's trial counsel made no proffer of what each declarant's testimony might have been apart, perhaps, from what was contained in the statements counsel sought unsuccessfully to introduce. Petitioner's presence at the crime scene and his involvement in the murder had been established in part by the testimony of convicted felons Jerry Joseph (a co-defendant) and William Wansley (Petitioner's informant cell-mate).

Thus, it appears initially that we have two possibilities for finding state court error rising to the level of a due process violation. Either: (1) these men lacked a Fifth Amendment privilege and were consequently available to be compelled to testify (or be jailed for contempt), but the trial judge erred in not compelling their live testimony *sua sponte*; or, (2) these men held testimonial privileges rendering them "unavailable" under Article 804 and their hearsay statements might be admitted as an exception, and the trial judge erred in not doing so.

With regard to the first possibility, it is fairly clear from the trial record that no Fifth Amendment colloquy took place after the declarants asserted this privilege. However, as the Louisiana Third Circuit pointed out, "[d]efense counsel did not attempt to compel the testimony of any of the three co-defendants." *See id.* at 1122 n.7; *see also*

Report and Recommendation of Magistrate Judge (Doc. 39, at 36–38) (discussing the defense attorney's efforts in this regard and finding no grounds for an ineffective assistance of counsel claim in Petitioner's application for the Writ). This Court has found no traces of a suggestion in the law, much less a mandate, that a trial judge probe into the propriety of a witness' assertion of a privilege where that assertion is not facially spurious or where an objecting party's attorney does not raise the issue. It is to be noted that while a trial court has an affirmative duty—and is afforded correspondingly broad discretionary powers—to protect a testifying witness' Fifth Amendment privileges from encroachment, *see, e.g., United States v. Lyons*, 703 F.2d 815, 818 (5th Cir. 1983), in our adversarial system the court has no affirmative duty to advocate on behalf of parties represented by counsel. *Cf. United States v. Weaver*, 282 F.3d 302, 314 (4th Cir. 2002). These facts and observations foreclose the first possibility as a route for finding error sufficient to warrant our issuance of the Writ.

We are left then with only the second possibility for discovering error in the judgments of the state courts. The state courts can be said to have properly refused to admit the out-of-court statements as hearsay exceptions if they determined that either: (1) each statement was made by a declarant not "unavailable" under that article; **or** (2) each statement lacked considerable assurance or indicia of its reliability or trustworthiness. *See* LA. CODE EVID. ANN. art. 804 (2006). Our review of the state courts' conclusion in this regard ends not necessarily at the trial court, but at the highest state court that reviews the case. *See Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc) (reviewing a state supreme court's application of United States Supreme Court

precedent). That is significant in this case, because here, although the trial court may not have fully stated on the record all its reasoning, however imperfect or spurious, to our satisfaction (nor must it have done so, under *Neal*), the Louisiana Third Circuit Court of Appeal directly addressed the Fifth Amendment "unavailability" issues. *See State v. McCullough*, 774 So.2d 1105, 1121–22 & n.7 (La. App. 3 Cir. 2000). The Louisiana Third Circuit pointed out that at least Cedric Howard and Fredrick Gradley, two of the co-defendants at issue, may not have been entitled to invoke the Fifth Amendment privilege, given that their own convictions had already been affirmed by the Louisiana Supreme Court. *See id.* at 1122 n.7 ("It appears that Howard and Gradley had no valid Fifth Amendment privilege to assert at trial."). If this had been the case, they were not "unavailable" to testify under Article 804's definition. As for Bush, the third co-defendant, the Louisiana Third Circuit could not determine whether he was entitled to invoke the Fifth Amendment privilege. *Id.* ("Whether Bush had a Fifth Amendment privilege is not as clear."). That leaves us only with the second prong of the second option for finding error in the state courts' decision not to admit the three hearsay statements: the Louisiana Third Circuit concluded that "[w]hile it is questionable whether the co-defendants were in fact unavailable for purposes of La. Code Evid. art. 804, it is not necessary to resolve this issue because we find the statements were not shown to be reliable and trustworthy." *McCullough*, 774 So. 2d at 1121 n.7. Thus, in any event—even if the trial court would have determined unavailability—the state courts have ruled out the possibility of the admissibility of the evidence in question.

Under Fifth Circuit precedent—even in federal cases—a trial court's determination

8

of the reliability of hearsay testimony is subject to the clearly erroneous standard:

> In reviewing a trial court's determination that a confession was voluntary, this circuit has applied the clearly erroneous standard. The Fifth Circuit, and others, have also applied the clearly erroneous test in reviewing a trial court's finding that there was consent to a warrantless search.
>
> The absence of express findings of fact by the trial court does not prevent the application of this test in appellate review of preliminary evidentiary rulings. . . . We think that a similar rule should be applied in reviewing determinations whether the trustworthiness of a hearsay statement is clearly indicated.

*United States v. Bagley*, 537 F.2d 162, 166 (5th Cir. 1976) (citations omitted).

Under 28 U.S.C. § 2254(e)(1), as mentioned above, "a determination of a factual issue made by a State court shall be presumed to be correct." We defer to the Louisiana Third Circuit's express determination that "we find the statements [of the three co-defendants at issue] were not shown to be reliable and trustworthy." *McCullough*, 774 So.2d at 1121 n.7. Based upon their estimation of the trustworthiness of the declarants' statements, and their comparisons of the facts of this case with the statements made in similar cases, the Louisiana state courts' decisions were not clearly erroneous. Once they made this decision, that was the end of the road for Petitioner's attempt to introduce the statements. Per the United States Supreme Court's decision in *Chambers* (as interpreted by *Egelhoff*), if the hearsay statement is not reliable and trustworthy, the other issues are irrelevant; the statement should not be admitted. Here is the United States Supreme Court's version of clearly established federal law as presented by *Chambers*:

> We held in *Chambers* that "the exclusion of [certain] critical evidence, coupled with the State's refusal to permit [petitioner] to cross-examine McDonald, denied him a trial in accord with traditional and fundamental

9

standards of due process." We continued, however:

> "In reaching this judgment, we establish no new principles of constitutional law. Nor does our holding signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial."

> In other words, Chambers was an exercise in highly case-specific error correction. At issue were two rulings by the state trial court at Chambers' murder trial: denial of Chambers' motion to treat as an adverse witness one McDonald, who had confessed to the murder for which Chambers was on trial, but later retracted the confession; and exclusion, on hearsay grounds, of testimony of three witnesses who would testify that McDonald had confessed to them. We held that both of these rulings were erroneous, the former because McDonald's testimony simply was adverse, and the second because the statements "were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability," and were "well within the basic rationale of the exception for declarations against interest." Thus, the holding of Chambers—if one can be discerned from such a fact-intensive case—is certainly not that a defendant is denied "a fair opportunity to defend against the State's accusations" whenever "critical evidence" favorable to him is excluded, but rather that erroneous evidentiary rulings can, in combination, rise to the level of a due process violation.

Egelhoff, 514 U.S. 37, 52–53 (citations and emphasis omitted).

This interpretation of Chambers formed the basis of the Louisiana Third Circuit's opinion in Petitioner's appeal from the state trial court. See McCullough, 774 So.2d at 1122–25 (quoting at length from Louisiana state court decisions applying the rationale of Chambers to varying factual situations). "We have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state . . . court's application of [federal law] is erroneous or incorrect." Martinez v. Dretke, 404 F.3d 878, 884 (5th Cir. 2005) (quoting Neal v. Puckett, 286 F.3d 230, 236 (5th Cir. 2002)

(en banc)). Unless the Third Circuit's application of *Chambers'* guiding principles is *objectively unreasonable*, we must defer to its conclusions. After setting forth the proper inquiry under the established federal law at the time of their decision, the Third Circuit concluded:

> The trial court did not err in refusing to admit the statements in evidence as the defense failed to establish their reliability. Other than noting that the statements were made to police officers prior to the [Petitioner]'s arrests, [defense] counsel did not present anything to establish their reliability. Although not mentioned at the hearing on the motions *in limine*, the fact that Bush's second statement was made under oath implies a somewhat higher level of reliability; however, the statement did not contain any statements against penal interest and, as the testimony at trial and the contents of the statement established, Bush and the Defendant consider themselves stepbrothers.

*McCullough*, 774 So. 2d at 1125.

Giving these factual determinations the presumption of correctness Congress prescribes in § 2254, we are unable to find fault with the Louisiana state courts' interpretation of and reliance upon "clearly established Federal law, as determined by the Supreme Court of the United States" in *Chambers* and its progeny. *See id.* at 1124–25. The Petitioner has provided no evidence to rebut this presumption of factual correctness, so the state courts' low estimation of the out-of-court statements' reliability must stand. Their application of *Chambers* to the facts of Petitioner's case can not be said to be objectively unreasonable.

## IV. Conclusion

For the reasons stated above, after an independent review of the record and the Report and Recommendation of the Magistrate Judge previously filed herein, including any objections filed by Petitioner, and having determined that the relevant findings and

11

recommendations as to the second ground of Petitioner's application are incorrect under the applicable law (the first and third being correct), Petitioner's Application for Federal Writ of Habeas Corpus under 28 U.S.C. § 2254 alleging that he is in custody in violation of the Constitution and laws of the United States will be denied and dismissed with prejudice.

SIGNED on this 12th day of November, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE